IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Thomas Leon Taylor, ) | C/A No. 0:11-327-TLW-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Sgt. T. LaPette, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

    The plaintiff, Thomas Leon Taylor ("Taylor"), a self-represented pretrial detainee, filed this action pursuant to 42 U.S.C. § 1983 against the defendant, Sergeant T. Lippett.[1]  This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment.  (ECF No. 25.)  Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Taylor of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendant's motion.  (ECF No. 26.)  Taylor filed a response in opposition to the defendant's motion.  (ECF No. 33.)  Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

## BACKGROUND

    The following facts are either undisputed or are taken in the light most favorable to the non-moving party, to the extent they are supported by the record.  This matter arises out of two incidents, occurring on December 8, 2010 and January 1, 2011, in which Taylor alleges that he was subjected to unconstitutionally excessive force by Defendant Lippett, a guard at the Alvin S. Glenn Detention

---

[1] The record shows that the correct spelling of the defendant's name is Timothy Lippett.  (See Lippett Aff., ECF No. 25-2 at 1.)



Center where Taylor is detained. With regard to the December 8, 2010 incident, Taylor asserts in his Complaint that Lippett sprayed him with chemical munitions, causing injury to his eyes. Taylor contends that this stemmed from Taylor's attempts to protect his rights because he was being denied legal materials. As to the January 1, 2011 incident, Taylor asserts that while transporting Taylor to the Special Housing Unit, Lippett struck Taylor with a closed fist when Taylor was shackled and handcuffed, slammed Taylor to the floor head first, and kicked Taylor repeatedly in the face with his boot. Taylor also complains that he is being denied adequate indigent legal supplies in violation of the United States Constitution.

Evidence submitted in support of the defendant's motion, including video footage documenting most of the events at issue, sheds additional light.[2] Lippett has submitted an affidavit averring that on December 8, 2010, Taylor was transported to the Special Housing Unit ("SHU"). Taylor asked for his legal papers, and Lippett responded that he would inquire about them. Apparently unhappy with the delay, Taylor became disruptive, placing his arms through the food flap in his SHU cell, which violates detention center policy. Lippett was called to the SHU dorm, where he gave Taylor at least three direct orders to remove his arms from the food flap. Lippett informed Taylor that he was going to use "cap stun spray" to induce Taylor's compliance, which is permitted by detention center policy, and retrieved a video camera to document the incident.

The videotape shows Taylor creating a disturbance by loudly complaining about his legal materials. It further shows that Taylor had prepared himself for Lippett's use of chemical munitions by wrapping a shirt around his face. Taylor continued to refuse to obey Lippett and Lippett

---

[2] Although Taylor asserts in his memorandum in opposition that the video has been altered and portions erased, he does not specify what he asserts is missing. Nor has he presented any evidence refuting Lippett's version of events.



employed the cap stun spray. Because Taylor had protected his face with the shirt, the initial burst did not have effect on Taylor, so Lippett administered another burst of spray. Taylor finally obeyed Lippett, removing his arms from the food flap and allowing himself to be handcuffed. Taylor was immediately led to the shower to rinse off the spray and Lippett called the medical staff to examine Taylor. Taylor continued his disruptive behavior and threatened to break the sprinkler head in his cell. He was placed in a restraint chair to "bring him into compliance." (Lippett Aff. ¶¶ 6-8, ECF No. 25-2 at 2; see also Waters Aff. Ex. A, December 8, 2010 Video, ECF No. 25-7.)

Approximately three weeks later, on January 1, 2011, Taylor was again being taken to SHU for disciplinary reasons. Much of this incident was also recorded on camera. The video shows Taylor becoming aggressive to the guard attempting to place handcuffs on Taylor and shows Taylor push the guard with both hands. Another guard called for assistance, and approximately ten officers responded, including Lippett. Lippett avers, and the video shows, that Lippett used a trip technique to place Taylor on the ground. Although the camera angle at this point does not provide an unobstructed view of Taylor due to the many officers surrounding him, Lippett avers that he did not kick or punch Taylor, and the video shows no evidence that he did. Taylor apparently continued to resist but was ultimately restrained, brought to his feet, and transported to SHU. On the way there, Taylor spat in Lippett's face. Taylor was subsequently convicted of assault and battery in the third degree in Magistrate's Court in Richland County for spitting on Lippett.[3]

---

[3] The video does not clearly show Taylor spit on Lippett and it appears from Lippett's affidavit that it occurred after they were out of the surveillance camera's view. Nonetheless, because Taylor pled guilty to this offense and was convicted beyond a reasonable doubt, it must be taken as true. See United States v. Wight, 839 F.2d 193, 196 (4th Cir. 1987) (applying the doctrine of collateral estoppel to issues litigated in a criminal case to a subsequent civil proceeding). In any event, just as with all of Lippett's factual averments, Taylor has not disputed this fact in his filings in this court.



## DISCUSSION

A.     **Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see,



e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Exhaustion of Administrative Remedies**

As an initial matter, Lippett asserts that Taylor failed to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[4] This requirement "applies to all inmate suits about prison life, whether they involve general circumstance or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See Booth v. Churner, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

---

[4] Pretrial detainees are specifically included in this requirement pursuant to § 1997e(h), which defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law."



The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. <u>Anderson v. XYZ Corr. Health Servs., Inc.</u>, 407 F.3d 674, 683 (4th Cir. 2005).

Here, the defendants have presented evidence that the Alvin S. Glenn Detention Center has a grievance system that allows inmates to file written complaints regarding the facility or its operations. (Harrell Aff. ¶ 6, ECF No. 25-3 at 2.) As a part of this system, inmates may appeal a staff response to the Assistant Director or his designee. (Harrell Aff. ¶ 7, ECF No. 25-3 at 2.) Taylor has failed to address the defendant's argument and evidence on this issue in his memorandum in opposition or refute their assertions in any way.

The court observes that Taylor commenced this action on February 8, 2011, approximately five weeks after the second incident of which he complains. Moreover, the face of his Complaint shows that he did not wait for any response from the detention center to his internal grievances before filing his Complaint in this court. (Compl., ECF No. 1 at 2.) Further, Lippett seems to argue that although Taylor presented three grievance forms to the court in support of his contention that he exhausted his administrative remedies, he did not actually file all of them with the detention center. In support of his motion, the defendant provided the court with Taylor's entire inmate file, which contains four grievances filed by Taylor between December 18-30, 2010. (Inmate File, ECF No. 25-5 at 82-89.) Juxtaposing the grievances attached to Taylor's Complaint with those in his inmate file as produced by the defendant reveals the following:  (1) the inmate file does not contain a copy of the grievance attached to Taylor's Complaint dated December 12, 2010 that appears to grieve the December 8, 2010 incident, (<u>compare</u> ECF No. 1-1 at 1-2 <u>with</u> ECF No. 25-5 at 82-89); (2) the grievance attached to Taylor's Complaint dated December 30, 2010 is not identical to the one corresponding to it from his inmate file, (<u>compare</u> ECF No. 1-1 at 3-4 <u>with</u> ECF No. 25-5 at 84-85);

and (3) the inmate file does not contain a copy of the grievance attached to Taylor's Complaint dated January 1, 2011 which appears to grieve the January 1, 2011 incident, (<u>compare</u> ECF No. 1-1 at 5-6 <u>with</u> ECF No. 25-5 at 82-92).  Thus, it appears that Taylor has not properly exhausted his administrative remedies with regard to the claims he asserts in this action.

**C.    Excessive Force Claim**

Even if Taylor's claims were properly exhausted, they would nevertheless fail as a matter of law, because no reasonable jury could find based on the record that Lippett's use of force during either the December 8, 2010 or January 1, 2011 incident was unconstitutionally excessive.  In fact, as previously noted, other than a passing statement that videotapes of the incidents at issue have been altered, Taylor fails to respond to Lippett's motion with regard to Taylor's excessive force claims or rebut the evidence presented by Lippett in any way.

An excessive force claim of a pretrial detainee arises under the Fourteenth Amendment. <u>Orem v. Rephann</u>, 523 F.3d 442, 445 (4th Cir. 2008).  In evaluating a claim for excessive force, the issue is whether the defendant "inflicted unnecessary and wanton pain and suffering." <u>Id.</u> at 446 (citing <u>Taylor v. McDuffie</u>, 155 F.3d 479, 483 (4th Cir. 1998)).  In answering the question of whether this constitutional line has been crossed, the following factors are relevant:  (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of the injury inflicted; and (4) whether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm. <u>Id.</u> at 446 (citing <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The United States Court of Appeals for the Fourth Circuit has addressed the use of chemical munitions in a prison setting.  In <u>Bailey v. Turner</u>, 736 F.2d 963, 969 (4th Cir. 1984), the Fourth



Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution. Specifically, the Bailey Court held that prison officials may use mace to compel the obedience of a recalcitrant prisoner. Id. at 969-70. The Bailey Court found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat. Id. Whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used." Id. at 969. Furthermore, the Fourth Circuit has stated that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials." Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996) (internal quotations marks & citation omitted). Although, as noted above, Bailey addressed the use of mace in a prison setting, the court finds its guidance instructive in the detention center context as well, since the tests to determine whether force was excessive under the Fourteenth and Eighth Amendments, while not exactly the same, consider similar factors. Compare Orem v. Rephann, 523 F.3d 442, 445 (4th Cir. 2008) (listing factors to consider in determining whether a pretrial detainee had been subjected to excessive force in violation of the Fourteenth Amendment) with Whitley v. Albers, 475 U.S. 312, 321 (1986) (outlining factors to consider to determine if force was excessive in violation of the Eighth Amendment's proscription against cruel and unusual punishment of convicted prisoners).

Based on the unrefuted evidence presented in this case, no reasonable jury could find that the force Lippett used on Taylor either on December 8, 2010 or January 1, 2011 inflicted unnecessary



and wanton pain and suffering. The record clearly and indisputably shows a recalcitrant detainee creating a disturbance and refusing to comply with orders. During the December 8 incident, Lippett warned Taylor before employing chemical munitions. Taylor persisted in his behavior. Lippett used a second burst only after the first proved ineffective due to Taylor's defensive measures. No reasonable jury could find that the force was not applied in a good faith effort to maintain and restore discipline or that Lippett employed his munitions maliciously and sadistically for the very purpose of causing harm. See Orem, 523 F.3d at 446.

The same holds true with regard to the January 1 incident. The record unequivocally shows Taylor acting in an aggressive manner and resisting being restrained, even after numerous officers appeared on the scene to subdue him. Taylor alleges no physical injury from this incident and the video belies his assertion that any guard punched or kicked him. See Witt v. West Virginia State Police, Troop 2, 633 F.3d 272, 276 (4th Cir. 2011) (stating that "when a video 'quite clearly contradicts the version of the story told by [the plaintiff] . . . so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment' ") (alterations in original) (quoting Scott v. Harris, 550 U.S. 372, 378, 380 (2007)). The necessity for force was further underscored by Taylor's aggression in spitting on Lippett, an offense to which he pled guilty in criminal court. Again, no reasonable jury could find based on this record that the force employed was constitutionally excessive. See Orem, 523 F.3d at 446; Williams, 77 F.3d at 763; Bailey, 736 F.2d at 969.

**D.     Access to the Courts**

As noted above, in Taylor's sixteen-page memorandum he addresses neither Lippett's argument regarding his failure to exhaust administrative remedies nor Lippett's evidence regarding

Taylor's excessive force claims that were asserted in his Complaint in this matter. Rather, he devotes nearly the entirety of his response to his dissatisfaction with the amount of paper, stamps, and stationery that are provided to indigent defendants at the detention center and his limited access to the detention center library, as well as seeking reconsideration the court's order denying the appointment of counsel. As an initial matter, the court observes that any claim based on access to the courts is (1) not properly exhausted, see supra part B, and (2) insufficiently pled, see Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1953 (2009).

In any event, such a claim would fail as a matter of law. To demonstrate a claim based on denial of access to the courts due to inadequate legal materials, a plaintiff must show a specific actual injury resulting from the alleged denial. Lewis v. Casey, 518 U.S. 343, 351-52 (1996); Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996). The Lewis Court stated that a plaintiff must "demonstrate the alleged shortcomings in the law library or legal assistance program hindered his efforts to pursue a legal claim."[5] Lewis, 518 U.S. at 351; see also Magee v. Waters, 810 F.2d 451, 452-53 (4th Cir. 1987) (stating that a detainee was not denied a constitutional right within the meaning of Bounds where he advised the court of "no specific problem he wished to research and of no actual injury or specific harm which has resulted to him by his limited access to the jail library or its limited contents").

Taylor's dissatisfaction with the number of stamps, envelopes, and writing instruments provided to indigent detainees is insufficient to establish such a claim, as it is clear that Taylor is

---

[5] Taylor is a pretrial detainee and it appears that his access to the court claim is centered around his pending criminal prosecution. Under United States v. Chatman, 584 F.2d 1358 (4th Cir. 1978), a pretrial detainee's constitutional right to access to the courts in preparing his defense is satisfied if he has an attorney or is offered counsel but waives his right to counsel. Id. at 1360 (discussing applicability of Bounds v. Smith, 430 U.S. 817 (1977), to pretrial detainees).



being provided some materials and he has not demonstrated, or even alleged, that he has suffered injury in any legal proceeding due to an inability to access the courts. See Lewis, 518 U.S. at 351 (stating that an inmate must demonstrate that the deficiencies in the prison's library or legal assistance program "hindered his efforts to pursue a legal claim"); Cochran, 73 F.3d at 1317 (holding that the district court properly dismissed a claim for denial of access to the courts where the plaintiff failed to identify any actual injury resulting from official conduct); Strickler v. Waters, 989 F.2d 1375, 1384 (4th Cir. 1993) (observing that a prisoner had a "basic requirement that he show specific harm or prejudice from the allegedly denied access"). Thus, this claim, to the extent it is even properly before the court, must also fail.

## RECOMMENDATION

For all of the foregoing reasons, the court recommends that Defendant Lippett's motion for summary judgment (ECF No. 25) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 20, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).